# Wallace, Appellant, v. Snodgrass.

*Church law—Presbyterian Church—Dissolution of pastoral relation— Salary of minister.*

Where a Presbytery of the Presbyterian Church dissolves the pastoral relation between a minister and his congregation without any action on the part of the congregation, the effect of the dissolution is to suspend the right of the minister to render pastoral services and the liability of the congregation to the minister for compensation, pending a final determination of the question as to the regularity of the action of the Pres-

bytery. In such a case the fact that the action of the Presbytery is thereafter decreed to be illegal, does not affect the status of the parties during the period of litigation, and if the minister seeks and secures other employment during such period, and never offers to resume the pastoral relation, he cannot maintain an action against the congregation for his salary during the period from the dissolution of the pastoral relation to the date of the decree declaring such dissolution invalid.

Argued May 17, 1907. Appeal, No. 94, April T., 1907, by plaintiff, from judgment of C. P. Mercer Co., Jan. T., 1904, No. 133, for defendants non obstante veredicto in case of Joseph R. Wallace v. Leander Snodgrass et al., Trustees of the United Presbyterian Church of Jamestown, Mercer county, Pa. Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit for salary.

WILLIAMS, P. J., filed the following opinion :

The defendant congregation is an unincorporated religious association, a member of Lake Presbytery, and, as such, subject to all of the laws, usages and deliverances of the various church courts of the " United Presbyterian Church of North America," and bound by the various provisions of its laws relating to church government, establishing and dissolving pastoral relations, etc. The plaintiff is a regularly licensed minister of said religious body or denomination, and is, in like manner, bound by and subject to all of the laws and usages thereof, as set forth in its " Book of Government and Discipline."

In the month of May, 1871, the plaintiff received and accepted a call from the defendant congregation, and was soon thereafter ordained as pastor of the Jamestown church, at a salary of $1,000 per year. Under the laws of this church or religious body, the pastoral relation thus established between the plaintiff and the Jamestown congregation would continue until regularly dissolved by the Presbytery of which said congregation should at the time be a member.

On April 11, 1891, a petition or complaint, signed by the members of the session of the Jamestown congregation, was presented to Lake Presbytery, of which said congregation was then a member, asking that the pastoral relation between the

plaintiff and the defendant congregation be dissolved, for the reasons set forth in the petition, and which appear in full on pages 4, 5 and 6 of the testimony.

The elders signing the petition were directed to formulate their complaint into charges, in order that there might be a judicial investigation, but declined to do so. The Presbytery then resolved to investigate the matter, but not judicially, and at a subsequent meeting took sworn testimony. As a result of its investigation, the Presbytery requested the plaintiff, as pastor, and the elders, or session, to resign their offices, but this they declined to do. The Presbytery then dissolved the relation between the plaintiff and the congregation, as well as between the elders and the congregation.

Against this action, so far as it related to himself, the plaintiff took an appeal, or removed the case to the Synod, known as the " First Synod of the West," and made complaint that it was illegal and unwarranted. The Synod, on September 30, 1891, after discussion upon the testimony taken, sustained the plaintiff's appeal or complaint, thus reversing the action of the Lake Presbytery. In view of this action of the Synod, Lake Presbytery, on October 15, 1891, declared the pastoral relations between the plaintiff and the Jamestown congregation to be re-established.

At a called meeting of Lake Presbytery, held at Sandy Lake, December 7, 1891, a petition was received, signed by ninety members of the Jamestown congregation, stating that matters were growing worse, and praying for relief. As against this petition, a counter petition was presented, signed by 151 members and adherents of the congregation, who took sides with the plaintiff. In view of these petitions, Presbytery decided to meet in Jamestown on December 14, 1891, to make inquiry and take such action as might be deemed proper. At this meeting, after inquiry and conference with the plaintiff, the whole matter was postponed until a subsequent meeting.

On April 11, 1892, Presbytery again met, and, after requesting the plaintiff to resign, and receiving his refusal to do so, proceeded to dissolve the pastoral relation, and at the same time appointed Rev. James Dodds to preach on the fourth Sabbath of April, 1892, and declare the pulpit vacant. The plaintiff preached his last sermon to the Jamestown congregation

on the third Sunday of April, 1892, and on the fourth Sunday of April, 1892, Rev. James Dodds preached there, by appointment of the Presbytery, as above stated, and declared the pulpit vacant.

Against this action, the plaintiff offered an appeal, which the Presbytery refused to consider. He then gave notice of complaint, and within ten days thereafter lodged a copy of the same with the clerk of Presbytery, as required by the church law. The Synod, at a meeting beginning August 31 and continuing until September 6, 1892, sustained the complaint, and from this action Rev. Free, a member of the Presbytery, gave notice of an appeal by the Presbytery to the next General Assembly. The judiciary committee was then requested to bring in a paper stating the effect of this latter action, and made a report as follows:

" The effect of sustaining a complaint against the action taken is to reverse the action of the court below. The action of the Presbytery being reversed the relation between the pastor and congregation of Jamestown remains the same as before the action was taken. An appeal being taken, all proceedings are arrested, and Mr. Wallace cannot enter upon the pastoral relation until the Assembly may take action."

This report was adopted by the Synod.

On December 15, 1892, the plaintiff entered suit in the court of common pleas of Mercer county, Pa., at No. 120, January Term, 1893, to recover from the defendant the salary due to him. On January 28, 1893, judgment was entered in favor of the plaintiff for the amount shown by his statement of claim, $1,211.79. On July 5, 1893, the judgment was paid, and receipted on the execution docket as follows:

" Received July 5, 1893, from T. A. McMaster, Harrison Hunter and H. M. Gamble $1,260.12, being debt, interest and costs of the above-stated judgment to this date. . . ." It is admitted by the plaintiff that the sum recovered in this suit paid his salary in full until May 1, 1892.

About April 1, 1893, the plaintiff began to preach regularly for the New Bethlehem congregation, in Beaver county, Pa., said church being a member of Frankfort Presbytery. On May 30, 1893, the appeal of Lake Presbytery from the action of the First Synod of the West was sustained by the General Assem-

bly at its meeting held at Monmouth, Ill.    Shortly after this action of the General Assembly, the plaintiff received and accepted a call from the New Bethlehem congregation of Frankfort Presbytery, and removed his family there about the last of May or June 1, 1893.    The plaintiff also applied for and received a certificate of ministerial standing and dismissal from Lake Presbytery, and on September 19, 1893, was duly installed as pastor of the New Bethlehem congregation, of Frankfort Presbytery, where he has since continued as pastor, and has rendered no services to the Jamestown congregation since the third Sunday of April, 1892, the date of preaching his last sermon there.

In 1898, about five years after the decision of the General Assembly, and about three years after its refusal to grant a rehearing, the plaintiff filed in the court of common pleas, No. 1, of Allegheny county, Pa., a bill in equity to declare void the action of the General Assembly in sustaining the action of Lake Presbytery dissolving the pastoral relation between the plaintiff and the Jamestown congregation.    The bill was served on the trustees of the General Assembly, who answered that they were not proper parties to the bill, and, to sustain their answer, referred to the charter of the General Assembly.    Upon inspection of the charter the court below sustained the answer and dismissed the bill.    On appeal this action was reversed by the Supreme Court, in an opinion delivered by Mr. Justice Dean on December 30, 1899, reinstating the bill and directing the defendants to make answer thereto : 194 Pa. 178.

After full hearing, the court below, in an opinion by Stowe, P. J., found as a fact that there were irregularities in the proceedings before the General Assembly which rendered its decision null and void, and entered a decree as follows :

" And now, June 10, 1901, this cause came on to be heard at this term, and was argued by counsel, and, therefore, upon consideration thereof, it is ordered, adjudged and decreed that the action of the General Assembly of the United Presbyterian Church of North America, in reversing the action of the First Synod of the West, and sustaining the action of Lake Presbytery in removing Jos. R. Wallace, the plaintiff, from the pastorate of the Jamestown United Presbyterian Church, be declared null and void.    And that he be restored to the position

of pastor of said church, with all the rights and benefits pertaining thereto, as fully and with the same effect as if the action of the First Synod of the West had not been reversed."

On an appeal this decree was affirmed by the Supreme Court, in an opinion delivered by Mr. Justice DEAN on January 6, 1902 : 201 Pa. 292.

After the affirmance of the decree, as above stated, the plaintiff gave or sent copies of it to the elders of the church and to the clerk of Lake Presbytery, and at a meeting of Lake Presbytery, held at Adamsville, Pa., June 20, 1902, the following notice was directed to be sent to the plaintiff and the Jamestown congregation :

" ADAMSVILLE, PA., June 20, 1902.

" The REV. J. R. WALLACE, Zeller, Pa.

" Dear Bro. : At a special meeting of Lake Presbytery held in Adamsville yesterday the subjoined action was taken, and this will be your official notification of the same.   It will also be official notice to you of the meeting of Presbytery therein referred to.

" Very respectfully,

" DAVID REED MILLER, Clerk."

Following is the action of Presbytery :

" Your committee would recommend in the case of J. R. Wallace as now before us, by action of the General Assembly, (1) That he be officially notified that the way is now clear for his occupancy of the pulpit and pastorate of the Jamestown congregation.

" (2) But inasmuch as we cannot allow a member of another Presbytery to continue in the relation of pastor in a congregation under our jurisdiction, he be required to furnish a certificate of standing and dismissal from Frankfort Presbytery and unite with this Presbytery.

" (3) That a meeting of Lake Presbytery be called for July 11, 1902, at 11 A. M. in Greenville, Pa., to consider the action of J. R. Wallace in this matter and such other business as may properly come before us.

" (4) That a copy of this action be sent by the clerk to Rev. J. R. Wallace, and also one to the Jamestown congregation.

" P. W. FREE,     } Com."
" SAM'L DODDS,   }

On July 11, 1902, the plaintiff went to the meeting of
Presbytery in Greenville, and a committee, consisting of Da-
vid Reed Miller, Professor Samuel Dodds and Elder Orr, was
appointed to wait on him and receive his answer to the resolu-
tions of Presbytery, as above set forth.　To this committee he
presented a paper, as follows :

"Rev. D. R. Miller, D. D., Clerk of Lake Presbytery.

"Dear Sir : Your note and copy of action of Lake Presby-
tery reached me on June 25, only sixteen days ago.

"I had been absent from home, and the congregation to
whom I have been preaching was dismissed for a month's
vacation.　Under the circumstances it was impossible for me
to get my dismissal from Frankfort Presbytery and present
the same to this Presbytery to-day, as required by second reso-
lution.

"If, however, customary courtesy would be allowed me I can
procure my credentials later at my earliest convenience, and
can preach in Jamestown next Sabbath, July 13, 1902.

　　　　　　　　　　"Respectfully submitted,

　　　　　　　　　　　　　　"J. R. Wallace."

It seems that this committee declined to accede to the terms
proposed in this paper, and made a partial oral report to Pres-
bytery to the effect, "that negotiations looking toward an
amicable settlement were under way, but before reaching a
definite conclusion Brother Wallace had a request to present
to the Presbytery," which is as follows :

"I ask a conference with the pastors of Presbytery, that I
may see my duty clearer in the hope of a peaceful settlement
of the matter to-day."

The conference was granted by adding the pastors of Pres-
bytery to the committee.　After the conference had been held
the committee reported that an amicable settlement had been
reached by the resignation of the plaintiff of all pastoral claims
in the Jamestown congregation.　His resignation is made a part
of the report, and is as follows :

"After conference with the pastors of Presbytery with ref-
erence to the present state of the congregation, I am satisfied
that the way is not clear for my restoration, and that the decree

of the civil court cannot be carried out without trouble to the
congregation.   I, therefore, resign my pastorate of the U. P.
Church of Jamestown, Pa.                   J. R. WALLACE.

"Greenville, Pa., July 11, 1893."

The report was adopted, the resignation laid on the table,
and the clerk directed to notify the congregation.   The Pres-
bytery then adjourned to meet in Exposition Park, Conneaut
Lake, August 14, 1902, to act on this resignation.

On August 14, 1902, the plaintiff presented to Presbytery
a paper as follows :

"Whereas, I am now persuaded that I was misled by repre-
sentations made to me at Greenville, Pa., July 11, 1902, and
previously, concerning the state of the U. P. Church of James-
town, Pa., and, whereas, in giving up my demit of my pastor-
ate in said church I acted through fear that I would be deposed
from the ministry that day, or steps would be taken to that
end if I did not resign ; and, whereas, I have been credibly
informed that the congregation has not been cited to appeal
and has taken no action on my demit, I hereby withdraw it.

"This I do with the distinct understanding that as soon as
possible I will seek to have the First Synod of the West trans-
fer me and the congregation of Jamestown, Pa., to the fellow-
ship of Cleveland Presbytery.   And this I would do that this
Presbytery might have no trouble with me and that I might
have no trouble with them."

It appears from the minutes of this meeting of Presbytery
that the resignation of the plaintiff was taken up, and the
clerk stating that notice of the demit had been served on the
Jamestown congregation, a motion was made to accept the res-
ignation.   The plaintiff was then given fifteen minutes to
present his side of the case, after which the resignation was
unanimously accepted, and Rev. J. H. McCormick was ap-
pointed to preach in Jamestown on August 31, 1902, and de-
clare the pulpit vacant.   On September 9, 1902, Rev. McCor-
mick reported that he had, in obedience to the direction of
Presbytery, preached in Jamestown on August 31, 1902, and
declared the pulpit vacant.

After this action of the Presbytery, the plaintiff petitioned
both the First Synod of the West and the General Assembly to
set it aside, but his petition was refused by both bodies.   Hence,

the action of Lake Presbytery in accepting plaintiff's resignation on August 14, 1902, and dissolving the pastoral relation between him and the Jamestown church on August 31, 1902, stands unreversed.

On January 15, 1904, the plaintiff entered suit in the court of common pleas of Mercer county, at No. 133, January Term, 1904, against the trustees of the Jamestown congregation, to recover eleven annual installments of salary of $1,000 each, accruing since May 1, 1892, with interest on each installment from the time it became due, on June 1, of each year.

At the close of the testimony produced on the trial, showing the facts above summarized, the court, on November 29, 1905, refused the request of defendants' counsel for binding instructions in favor of the defendants, and directed a verdict for the plaintiff for the sum of $960, subject to the opinion of the court on the legal question raised by defendants' third point.

It was conceded by the plaintiff and his counsel that plaintiff's salary had, prior to the bringing of this suit, been paid in full to May 1, 1892, and that on September 19, 1893, the plaintiff was duly installed as pastor of the New Bethlehem congregation of Frankfort Presbytery, he having previously applied for and received a certificate of ministerial standing and dismissal from Lake Presbytery, of which he was then a member, as required by the laws and usages of the United Presbyterian Church. The verdict is for the sum agreed upon by counsel as the amount of the plaintiff's salary, at $1,000 per year, from May 1, 1892, until September 19, 1893, after deducting therefrom the amount received by him from other sources, and computing interest on the balance to date of verdict.

The defendants' third point, with the answer of the court thereto, is as follows:

3. That the legal effect of the action of Lake Presbytery taken on April 12, 1892, dissolving the pastoral relation between the plaintiff and the United Presbyterian Congregation of Jamestown, and the rulings and deliverances of the First Synod of the West and the General Assembly, in this matter, received in evidence, was to relieve the plaintiff from the obligation of ministering to said congregation, and also to relieve the congregation from the obligation of paying any salary to the plaintiff, as long as these rulings and deliverances stood,

or until the date of the decree of the Supreme Court of Pennsylvania setting aside the action of the General Assembly. *Answer:* The legal question raised by this point is reserved.

Counsel for the plaintiff except, generally, to the charge of the court, and to the refusal of the court to affirm their first, second and third points, including the various paragraphs thereof. They also except to the affirmance of the defendants' first, second, fourth and fifth points.

The question raised by these several exceptions may well be disposed of in our consideration of the motion of defendants' counsel for judgment on the reserved question, non obstante veredicto.

An accurate understanding as to who are the real parties to this action will conduce to a clearer conception of the contractual relations between them and the duties and obligations resting upon each. The defendant congregation is an unincorporated religious association, and such organizations are recognized by the law of Pennsylvania as having a legal entity separate and apart from its members. The fact that this suit, as brought, is against certain individual members of the defendant congregation as trustees, is of no particular moment or controlling importance, as a suit in this form is well brought and service on the trustees is sufficient to give the court jurisdiction over such congregation, as an unincorporated religious body or association.

Further than this, it seems to be conceded on both sides and, in fact, the learned counsel for the plaintiff have filed a stipulation to the effect, that no judgment can be entered against the individuals named, but if judgment be entered in favor of the plaintiff, it must be against the congregation, and the lien thereof or of any execution issued thereon be confined or restricted to the property of the congregation or religious body known as the United Presbyterian Church of Jamestown, Pa.

We have, then, as plaintiff, Rev. J. R. Wallace, and as defendant the United Presbyterian Congregation of Jamestown, Pa., not as individual members, but as a legal entity or body, separate and apart from its members.

Prior to and at the time of the establishment of the pastoral relation between them, the plaintiff and defendants were each

subject to the laws and usages of the United Presbyterian Church of North America, and from and after the establishment of such relation, were subject to the jurisdiction of Lake Presbytery, the First Synod of the West and the General Assembly, and were bound by the laws, usages and deliverances of each of these church courts in all matters brought before them for adjudication.

About May 1, 1871, the defendant congregation called the plaintiff as pastor, which call was sustained by Lake Presbytery, and he was thereafter duly ordained and installed as pastor of the Jamestown congregation, at a salary of $1,000 per year. The relation thus established between the parties gave rise to certain reciprocal duties and obligations to be discharged by each toward the other. It became the duty of the plaintiff to faithfully " perform all the duties of a pastor, to preach the Gospel in purity and simplicity ; to catechise and exhort from house to house, to visit the sick, and to perform whatever other duties were incumbent on him as a faithful minister of Christ." It likewise became the duty of the defendant congregation to " encourage the plaintiff in his labors for its instruction and edification, to submit to him in the due exercise of his authority, and while he was its pastor to give him a competent worldly support, and whatever else it might see to be needfnl for the honor of religion and his comfort."

These were mutual and dependent promises, performance by one party being the consideration for performance by the other. The plaintiff's promise was to perform the duties of a pastor for the defendant congregation. The defendant congregation promised to pay, as a consideration for such services, the compensation agreed upon. Until the plaintiff had rendered some of the services contracted for, had, at least, partly performed his contract, no obligation accrued against the defendant congregation to pay to him any part of the compensation, unless performance was prevented by some act of the defendant. Liability, then, under this contract would extend only to such breaches thereof as were within the control of the party alleged to be in default, and not to those caused by circumstances over which such party had no control.

This being the situation of the parties at the time the pastoral relation was established between them, a consideration of

their subsequent actions will aid in a determination of their respective liabilities in the present controversy.

For some twenty years after his ordination, the plaintiff continued to discharge his duties as pastor of the defendant congregation, and it, from time to time, paid to him the salary agreed upon. On April 11, 1891, as we have already seen, eight members of the session of the Jamestown church, of their own motion and, as the testimony shows, without any action taken by the congregation, presented to Lake Presbytery some complaint against the plaintiff, and requesting a dissolution of the pastoral relation. The elders who signed the petition declined to put the same in the form of charges, but Presbytery decided to investigate the matter informally, and as a result, requested both the pastor and the elders to resign, and on their refusal, dissolved the relation between the plaintiff and the congregation, as well as between the elders and the congregation. On an appeal by the plaintiff from this action, the Synod reversed the action of the Presbytery, and, on October 15, 1891, declared the pastoral relation between the plaintiff and the Jamestown congregation re-established. On December 7, 1891—without any action by the Jamestown congregation—a petition signed by ninety members was presented to Lake Presbytery, stating that the matters of difference between the plaintiff and said congregation were growing worse, and asked for relief ; but did not ask for a dissolution of the pastoral relation, but left the whole matter in the hands of Presbytery. As against this petition, a counter petition was presented, signed by 151 members of the congregation who seem to have taken sides with the plaintiff, thus clearly showing that neither petition was presented as a result of any congregational action.

Presbytery considered both of these petitions and, after investigation, requested the plaintiff to resign, and on his refusal to do so, dissolved the pastoral relations and appointed a commissioner to declare the pulpit vacant. This action of the Presbytery was reversed by the Synod, but on an appeal, taken by a member of the Presbytery, the General Assembly reversed the action of the Synod and affirmed the action of the Presbytery.

Pending a decision of the case by the General Assembly, the plaintiff began to preach regularly for the New Bethlehem con-

gregation of Frankfort Presbytery, and shortly after the deci-
sion was rendered, he accepted a call from said congregation,
obtained a certificate of ministerial standing and dismissal from
Lake Presbytery, was duly installed as pastor of said congrega-
tion and has remained there ever since, having in the meantime
rendered no services whatever to the defendant congregation.

After having acquiesced in the decision of the General As-
sembly for two years, the plaintiff petitioned for a rehearing,
which was refused. After waiting three years longer, he pro-
ceeded against the General Assembly in the civil courts, and
succeeded in having the action of the General Assembly de-
clared null and void.

The defendant congregation was at no time a party to any
of the proceedings above referred to, either in the church
courts or in the civil court, nor does it appear that it ever took
any action, as a congregation, pertaining to any of said pro-
ceedings. Nor is there any evidence to show that it at any
time authorized or directed any person either to institute or
conduct any of said proceedings in its behalf. The most that
can be said is that the members of the session at one time, and
some dissatisfied members of the congregation at another, made
complaints, upon which Presbytery took the action complained
of. How, then, could any liability accrue against the defend-
ant congregation, whether said proceedings were void or other-
wise? If it be argued that the defendant congregation is
bound by the act of the session, the answer is that, under the
laws of the United Presbyterian Church, the session is charged
with the spiritual oversight and government of the congrega-
tion; but we find no power vested in the session to act of its
own motion on behalf of the congregation in preparing charges
against the pastor. Aside from this, however, the action of
the Presbytery in dissolving the pastoral relation, in pursuance
of a complaint filed by the session, was reversed by the Synod
and the pastoral relation re-established. Hence, it is of no
importance in the present controversy whether the action of
the session as to these charges was binding on the congrega-
tion or not.

As a part of his ordination and installation as pastor of the
Jamestown congregation, the plaintiff was asked and required
to give affirmative answers to, inter alia, the following:

" III. Do you approve the Presbyterial Form of Church Government and the Directory for Worship, received by this church, as agreeable to, and founded on, the Word of God, and are you resolved, by the grace of God, to maintain and defend them ?

" IV. Do you promise to submit, in the spirit of meekness, to the admonitions of the brethren of this Presbytery, in subordination to the Synod and General Assembly ; . . . ."

Both the plaintiff and the defendant congregation were bound by the laws and usages of the United Presbyterian Church, and if obedience to the decision of the church courts justified the plaintiff in withholding his services from the defendant congregation, the same law would excuse or justify the congregation in withholding the compensation agreed upon for such services. If obedience to the laws and usages of the church and the decisions of the church courts can be invoked as an excuse or justification for nonperformance of his services as pastor of the Jamestown congregation, they can also be invoked by the defendant congregation as a defense in a suit to recover compensation for the period during which no services were performed by the plaintiff, especially when the defendant congregation was not a party to the proceedings which resulted in a suspension of the pastoral relation previously established between them, and was compelled to support another pastor or pastors during the time the controversy between the plaintiff and some of the individual members of the congregation was pending in the church courts. Even conceding that the action of Presbytery in dissolving the pastoral relation was based on a charge or complaint presented in pursuance of the official act of the defendant congregation, the church law and the decisions of the church courts were equally binding upon both parties: Riddle et al. v. Stevens, 2 S. & R. 537.

In the case cited, suit was brought by the pastor to recover for services alleged to have been rendered. At the trial, the defendants offered in evidence the minutes of the proceeding of Presbytery dismissing the plaintiff from his pastoral charge, on the complaint made against him for improper conduct in his private capacity. The court admitted the evidence, so far as it went to prove the suspension or removal of the plaintiff, but directed the jury that it was not evidence so far as it went to

inculpate the plaintiff, or was alleged to have dissolved the contract of the defendants for services actually rendered.    TILGH-MAN, C. J., in delivering the opinion of the Supreme Court, on this branch of the case, said : " The second error is the not permitting to be given in evidence the proceedings of the Huntingdon Presbytery, on a complaint made against the plaintiff for improper conduct in his private capacity.    These proceedings were, in some respects, directly pertinent to the issue ; the plaintiff's demand is for services rendered to the defendants as their pastor ; the Presbytery, according to the rules and discipline of the Presbyterian Church, had power to suspend the functions of the plaintiff, or even to remove him from his ministry.    So far as concerned his suspension or removal, the jury were directed to consider the proceedings as evidence ; but no regard was to be paid to the details of evidence before the Presbytery ; the particular facts alleged or proved were to have no effect on the verdict ; the decision of the Presbytery as to the suspension or removal of the plaintiff, was the only matter to be regarded.    Every church has a discipline of its own ; it is necessary that it should be so ; because, without rules and discipline, no body composed of numerous individuals can be governed.    But this discipline is confined to spiritual affairs ; it operates on mind and conscience, without pretending to temporal authority.    No member of the church can be fined or imprisoned ; but be he minister or layman, he may be admonished, reproved and finally ejected from the society ; so, may he retire from the society, at his own free will.    Under these restrictions, religious discipline may produce much good, without infringing on civil liberty. Both plaintiff and defendants were subject to the laws of the church, both as to the induction and removal of the plaintiff ; according to these laws, it was not in the power of the defendants to remove the plaintiff ; the Presbytery alone could do it, with a right of appeal, first to the Synod, and in the last resort, to the General Assembly.    This being the case, it was to no purpose to enter into the particulars of the plaintiff's misconduct before the jury ; the cause has been heard and decided by the Presbytery ; and so far as regarded the plaintiff's continuance in his ministry, that decision is binding, subject to an appeal to the superior ecclesiastical tribunals, as before mentioned. The court of common pleas was right, therefore, in deciding

that the proceedings before the Presbytery were evidence only so far as they proved the suspension or final discharge of the plaintiff."

In the case cited, the suit was to recover only for services rendered prior to the suspension or dismissal of the plaintiff, but the principle stated is applicable to the case at bar, and clearly shows that when Presbytery, whether acting upon complaint or charges preferred by the congregation or by individual members thereof, dissolved the pastoral relation between the plaintiff and the defendant congregation, its action was binding both on the plaintiff and the defendant congregation, subject only to appeal to the Synod and, finally, to the General Assembly, and that the legal effect of the decision of Presbytery was to at least suspend the plaintiff's right to continue in the capacity of pastor of the Jamestown congregation, and also to suspend the liability of said congregation to the plaintiff, pending final disposition of the matter in the church courts.

The action of Presbytery in dissolving the pastoral relation between the plaintiff and the defendant congregation was affirmed by the General Assembly, the highest church court of the United Presbyterian Church, and while the decision of the General Assembly was, as we have already seen, decreed null and void by the civil court, such decree was based entirely on the failure of the appellant on its appeal from the decision of the Synod to lodge its appeal and the reasons for it with the clerk of the General Assembly, together with authenticated copies of the record and testimony. The defendant congregation, however, was not a party to the suit brought in the civil court; neither was it a party to the proceedings in the church courts.

We are, therefore, unable to conceive how a congregation bound by the decision of the Presbytery of which it is a member, dissolving the pastoral relation, can be deprived of the services of its pastor during a long period of litigation, to which it was not a party, and still be liable to such pastor for the compensation agreed to be paid to him as a consideration for services actually rendered.

To hold the defendant congregation liable under the circumstances of this case is to say to it: " Lake Presbytery has dissolved the pastoral relation existing between Rev. Wallace and

the Jamestown church; this decision is binding on Rev. Wallace so that he can render no services to the congregation until the action of Presbytery has been passed upon by the General Assembly. It is also binding on the congregation so that it cannot accept his services pending a decision of the matter by the church courts. If, however, the decision of Presbytery is reversed because of some irregularity in the proceedings, in which the congregation had no part, it will still be liable for his salary in the meantime, although no services were rendered by him, and this notwithstanding the fact that the congregation has been compelled to support another pastor in the meantime."

The simple statement of such a proposition appears to our mind as both illogical and inequitable. There is no legal distinction between a contract with a minister and his congregation and any other civil contract for personal services. Hence, if performance of the contract becomes impossible by reason of any law, civil or ecclesiastical, which is binding on both parties, the liability of the parties thereunder is at an end.

Suppose that the defendant congregation had felt that it had been greatly damaged through the loss of the plaintiff's services to it, and had brought suit against him to recover damages for a breach of contract, would not his showing that he had been prevented from rendering the services contracted for, by an act of the church court dissolving the pastoral relation between him and the plaintiff congregation, have been a bar to a recovery? We are clearly of the opinion that it would, and this notwithstanding the fact that it might subsequently appear that there was some irregularity in the proceedings by which a dissolution of the pastoral relation was declared, as the judgment of the church court was binding upon the parties until reversed by competent authority. If such a dissolution of the pastoral relation would protect the plaintiff if he were the defendant in a suit brought by the congregation, it will equally protect the congregation in a suit brought against it.

That this was the view of the plaintiff is evidenced by his action subsequent to the decision of the Synod, from which an appeal was taken to the General Assembly, to some of which we may refer, as showing his acquiescence:

1. The pulpit of the Jamestown church was declared vacant, by direction of the Presbytery, on the fourth Sunday of April,

1892, since which time no services whatever were rendered by the plaintiff to the defendant congregation. The decision of the First Synod of the West, reversing the action of Lake Presbytery, was delivered and an appeal therefrom taken some time between August 31 and September 6, 1892.

2. The plaintiff began preaching for other congregations, and on December 15, 1892, entered suit in the court of common pleas of Mercer county to recover salary due to him to May 1, 1892, and made no claim whatever for salary accruing subsequent to that date, and on July 5, 1893, the judgment obtained in said suit was paid to his attorney, and so receipted on the record.

3. About April 1, 1893, the plaintiff began to preach regularly for the New Bethlehem congregation, in Beaver county, said church being a member of Frankfort Presbytery.

4. Shortly after the decision of the General Assembly on May 30, 1893, the plaintiff accepted a call from the New Bethlehem congregation, applied for and received a certificate of dismissal from Lake Presbytery, and was duly installed as pastor of said congregation.

5. About two years after the decision of the General Assembly, the plaintiff petitioned for a rehearing, which was refused, and in this refusal he acquiesced for some three years before commencing his action in the civil courts.

6. About one year after the decree of the civil court had been affirmed by the Supreme Court, the plaintiff resigned his pastorate of the Jamestown congregation, which resignation was accepted by Presbytery on August 14, 1902, and the pastoral relation was dissolved on August 31, 1902; and on January 15, 1904, about one year and a half after the acceptance of his resignation, he entered the present suit to recover eleven annual installments of salary, from May 1, 1892, covering a period during which he rendered no services whatever to the Jamestown congregation, and during which time said congregation was compelled to support another pastor and pay to him the sum of $1,000 per year for performing the very services that should have been performed by the plaintiff.

These facts and circumstances are persuasive evidence of the plaintiff's understanding that the action of Presbytery was binding upon him and suspended his right, not only to perform any

services for the Jamestown church, but also his right to receive compensation during such time as the action of Presbytery remained unreversed. The fact that it was finally determined by the civil court that the action of the General Assembly, reversing the First Synod of the West and thus affirming the action of Presbytery, was irregular because of some informality in taking or prosecuting the appeal, does not, to our mind, change the situation of the parties. The action of Presbytery suspended the right of the plaintiff to perform the services required of him as well as the liability of the defendants to compensate him therefor, pending a final settlement of the matter in the church court, and this whether the action of Presbytery should finally be determined to be legal or illegal. If any right accrued to the plaintiff by reason of irregularity in the proceedings dissolving the pastoral relations between him and the Jamestown congregation, his remedy, in the opinion of the court, would be an action for damages for a wrongful dismissal, instead of an action to recover salary for the period during the time the matter was pending in the courts, and during which he rendered no services whatever.

The theory of the learned counsel for the plaintiff seems to be that the decree of the civil court, declaring the action of the General Assembly in sustaining the action of Lake Presbytery in removing the plaintiff from the pastorate of the Jamestown church null and void and decreeing that he be restored to the position of pastor of said church, carried with it the right to recover from the defendant congregation salary for the time his services were suspended. This conclusion, however, does not follow from the language of the decree, even had the court had the power to make a decree against the defendant congregation. The language of that part of the decree as to the plaintiff's restoration is as follows : " And that he be restored to the position of pastor of said church, with all the rights and benefits pertaining thereto, as fully and with the same effect as if the action of the First Synod of the West had not been reversed." This decree makes no reference to the right of the plaintiff to recover salary for the time intervening between the date when the pastoral relation between him and the Jamestown church was dissolved and the time of his restoration was decreed by the civil court; nor could it do so, for the reason

that that question was not before the court. The proceeding in which this decree was entered was an equitable one, in which the plaintiff " avers that the illegal action of the church courts had deprived him of his salary which his congregation was willing to pay him, had injured him in his standing and reputation as a Christian teacher, and had practically excluded him from the reasonable exercise of the profession by which he lived. " The proceeding was in no sense one for the recovery of compensation for a period when no services were performed, and during which the plaintiff's right to perform them was suspended by the action of the church court, but was rather one for the restoration of the plaintiff to a position where he could earn the living or salary of which he alleged he had been deprived by the action of the church court. The decree of the court should, therefore, be construed accordingly, and, when so construed, is perfectly clear and consistent.

The plaintiff was pastor of the Jamestown congregation, receiving the salary of $1,000 per year. The pastoral relation had been, as it subsequently appeared, illegally dissolved, and the plaintiff was thus deprived of the opportunity of earning the salary he had been receiving. He appealed to the civil court for relief, asking that he be restored to the pastorate from which he had been dismissed, and thus placed in a position to perform the duties of a pastor and receive the compensation fixed therefor. Hence, the effect of this decree was to restore the plaintiff to the position of pastor of said church, and thus place him in a position for performing the services of a pastor and earning the compensation agreed upon. This was evidently the understanding of the plaintiff, as he at once served copies of this decree on the elders of the church and the clerk of Lake Presbytery; and then followed the action of the Presbytery notifying the plaintiff that the way was then open for his occupancy of the pulpit and pastorate of the Jamestown church. It appeared, however, that the plaintiff was at that time, and had been for some eight or nine years, the pastor of the New Bethlehem congregation of Frankfort Presbytery, having taken a certificate of dismissal from Lake Presbytery, and, therefore, not eligible to the pastorate of the Jamestown church, and could not be until he would receive a certificate of dismissal from Frankfort Presbytery, in the manner provided

by the laws of the church.  Instead of placing himself in a position for performing the duties of pastor of the Jamestown congregation, the plaintiff resigned the pastorate, to which he had been restored by the decree of the court, and this without performing any services whatever.

Assuming, however, that the plaintiff would be entitled to recover the compensation stated in the call, less such sums as he earned and received from other sources during the time his services were suspended by the action of Lake Presbytery, it is clear that this right was determined by his action in asking for and receiving a certificate of ministerial standing and dismissal from Lake Presbytery, thus voluntarily severing his connection with Lake Presbytery and accepting the call of the New Bethlehem congregation in Frankfort Presbytery.

The testimony shows that the plaintiff had severed his connection with Lake Presbytery and was installed as pastor of the New Bethlehem congregation as early as September 19, 1893.  Hence, his right, if any existed, to recover from the Jamestown congregation salary from May 1, 1892, to September 19, 1893, would accrue on the date last mentioned, and would be barred by the statute of limitations, unless suit was brought within six years from that date.  This suit was brought on January 15, 1904, a period of a little over eleven years after the right of action accrued.

The conclusions we have reached may, therefore, be summarized as follows:

1. The action of Lake Presbytery in dissolving the pastoral relations between the plaintiff and the defendant congregation was binding upon both parties, and had the effect of suspending the right of the plaintiff to render services required of him as pastor of the Jamestown congregation, and also suspended the liability of the defendant congregation to the plaintiff for the compensation agreed upon, pending a final determination of the question as to the regularity of the action of Presbytery in dissolving the pastoral relation.

2. The defendant congregation, not being a party to any of the proceedings in the church courts, was in no way responsible for the action of Lake Presbytery in dissolving the pastoral relations between the plaintiff and said congregation, whether such action was legal or illegal.

3. The right of the plaintiff to perform the services of pastor for the Jamestown congregation and the liability of the defendant congregation to pay the compensation mentioned in the call to the plaintiff, having been suspended by the act of Lake Presbytery in dissolving the pastoral relation, the fact that the action of Lake Presbytery was thereafter decreed to be illegal, either by the civil or church courts, would not change the status of the parties pending a final determination of the question as to the legality of the action of Presbytery, but could do no more than restore the plaintiff to his pastoral rights and fix the liability of the defendant congregation for the payment of compensation for services thereafter performed.

4 If any right of action existed in favor of the plaintiff as against the defendant congregation by reason of the action of Lake Presbytery in dissolving the pastoral relation, his remedy would be an action for damages for a wrongful dismissal.

5. If the plaintiff were entitled to recover anything as salary from the defendant congregation after the pastoral relation had been dissolved by Lake Presbytery, said recovery would be at the rate of $1,000 per year, less such sums as the plaintiff earned and received from other sources, and his right to recover would cease and determine upon his voluntarily severing his connection with Lake Presbytery and accepting a call from the New Bethlehem congregation of Frankfort Presbytery.

The conclusions stated make it unnecessary to discuss the various exceptions in detail. · It follows, from these conclusions, that judgment must be entered in favor of the defendant congregation on the reserved question, non obstante veredicto.

*Error assigned* was the judgment of the court.

*H. K. Siebeneck*, of *Seymour, Patterson & Siebeneck*, for appellant.—A void judgment, order or decree in whatever tribunal it may be entered is, in legal effect, nothing. All acts performed under it and all claims flowing out of it are void: Freeman on Void Judicial Sales, 17 ; Chicago, etc., Ry. Co. v. Summers, 113 Ind. 10 (14 N. E. Repr. 733 ; Blanton v. Carroll, 86 Va. 539 (10 S. E. Repr. 329) ; White v. Foote Lumber, etc., Co., 29 W. Va. 385 (1 S. E. Repr. 572) ; Campbell v. McCahan, 41 Ill. 45 ; Miller's Estate, 159 Pa. 562 ; Krecker

v. Shirey, 163 Pa. 534 ; Haddock v. Haddock, 201 U. S. 562 (26 Sup. Ct. Repr. 525).

*S. S. Mehard*, with him *Q. A. Gordon* for appellees.—The defendant not having discharged nor caused the discharge of plaintiff from the pastorate of defendant congregation, and the plaintiff not having performed any of the duties of said pastorate during the period in question, plaintiff is not entitled to recover from defendant salary as pastor nor damages for a wrongful discharge : Bredin v. Agnew, 3 W. & S. 300 ; Wright v. Smyth, 4 W. & S. 527 ; Stokes v. Burrell, 3 Grant, 241.

OPINION BY RICE, P. J., October 7, 1907 :

The controlling question in this case is one of law, arising out of facts which both parties admit are not in dispute. They are fully, clearly and accurately set forth in the opinion filed by the learned judge below, and there is no occasion for an attempt to restate them, either more elaborately or in more condensed form. From these facts the learned judge drew several legal conclusions, which are clearly and concisely stated in logical order at the end of his opinion. We concur with him in the first three of these conclusions as well as in his general conclusion that judgment should be entered for the defendant congregation non obstante verdicto, and in the reasoning of his opinion in support of them. We deem it unnecessary to go over the ground again, and will only notice two or three criticisms of them which are set forth in the elaborate and learned argument of the appellant's counsel.

As to the first conclusion, it is objected that the obligation of the Jamestown congregation to pay revived upon the date of the decree of the court of common pleas. But as an appeal (see Wallace v. Trustees of the General Assembly of the United Presbyterian Church, 201 Pa. 292), was taken therefrom, that decree could not have the effect claimed unless, first, the appeal did not operate as a supersedeas, and, second, the plaintiff was able and offered, after the decree of the common pleas and before the affirmation of the decree by the Supreme Court, to resume the pastoral relation and to perform his pastoral duties. We need not discuss the question of supersedeas, because the second essential was not established.

It is argued, however, that the decree of the Supreme Court operated to restore the obligation from the date of the dissolution of the pastoral relation, because, say counsel, speaking of the decree of dissolution by presbytery, " a void decree is void from its inception and not from the date when the final entry is made of the judicial declaration of its nullity." But we do not see how it can be successfully claimed that the action of presbytery had the effect to relieve him from the obligation to perform the pastoral duties he promised to perform at his installation, but did not relieve the congregation from its obligation to pay the salary. We are of opinion that according to the law of the church both were bound by that action of presbytery until it was annulled by the decree of the Supreme Court. But if it was a mere nullity which neither was bound to respect, the objection arises that the plaintiff did not elect so to treat it and to go on with the performance of the pastoral duties to which he had obligated himself as a condition precedent to his right to demand compensation.

To avoid this objection counsel are compelled to take the position that the presbytery was the agent of the congregation. This proposition, so far as it depends upon proof that the congregation brought about, or contributed to bringing about, the dissolution of the pastoral relation, is without any support whatever in the evidence. The congregation did not institute nor promote the proceeding in any way. Nor can the proposition be sustained upon the ground that the church law created the relation of principal and agent between the presbytery and the congregation. The former is the ecclesiastical superior of the latter, and is no more its agent in the formation or dissolution of a pastoral relation than it is the agent of the pastor. At the foundation of the case is the principle that the promises of the plaintiff and the Jamestown congregation at the installation of the former were mutual and dependent. This being the case, and the action of the presbytery being as binding upon the plaintiff as it was upon the congregation until it was annulled by the civil court, and the congregation not being in any way responsible for that action which prevented the plaintiff from performing his part of the contract, and the presbytery not being in fact nor under the church law the agent, in any sense of the term, of the congregation in this matter, we

are unable to escape the conclusion that the obligation of the congregation to pay the salary was suspended until the action of presbytery was annulled.

In the foregoing we have not attempted a full review and discussion of the questions involved in the case, because it seems to us unnecessary in view of the elaborate and satisfactory manner in which that has been done by the learned judge below.

The judgment is affirmed.